UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

    - v. -                                   :          **INDICTMENT**

BENJAMIN CHOW,                              :
    a/k/a "Ben Chow Zhou Bin,"            
    a/k/a "Benjamin Bin Chow,"               :
    a/k/a "Bin Zhou,"

        Defendant.                      :

- - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: OCT 3 0 2017

17 Cr. (    )

17 CRIM 667

## COUNT ONE

### (Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### Relevant Individuals and Entities

1.   At all times relevant to this Indictment, Firm-1 was a private equity investment firm headquartered in Beijing, China.

2.   At all times relevant to this Indictment, Firm-2 was a private equity buyout fund, headquartered in Palo Alto, California, with offices in Beijing, China, and was focused on investing in technology companies.

3.   From in or about February 2016 to in or about September 2016, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, was a Managing Director of Firm-1.   In or about September 2016, CHOW and others founded Firm-2 and CHOW has since been Managing Partner of Firm-2.   CHOW

JUDGE WOODS

holds a Masters in Business Administration from the University of California, Los Angeles and a Ph.D. in Aeronautics from the California Institute of Technology.

4.    At all times relevant to this Indictment, CC-1 was a friend and business associate of CHOW.  CC-1 was a partner at a third private equity investment firm, based in Hong Kong (the "Investment Firm").

5.    At all times relevant to this Indictment, Lattice Semiconductor Corporation ("Lattice") was a publicly traded technology company headquartered in Portland, Oregon.  Lattice's shares traded under the symbol "LSCC" on the Nasdaq Stock Market, which is located in Manhattan, New York.  Among other products, Lattice specialized in developing and manufacturing field-programmable gate arrays ("FPGAs"), which are integrated circuits designed to be configured by a customer or a designer after manufacturing.

## Overview of the Insider Trading Scheme

6.    From at least in or about March 2016 through in or about November 2016, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, provided to CC-1 material non-public information relating to a potential merger between Lattice and Firm-1 and later Firm-2, and CC-1 in

2

turn used such information to make profitable securities trades. Specifically:

     a.    As Managing Director of Firm-1 and later Managing Partner of Firm-2, CHOW obtained material non-public information regarding a potential merger agreement between Lattice and Firm-1 and later Firm-2. Information concerning the potential merger agreement, including the fact that the parties were exploring the possibility of a merger, was subject, among other things, to nondisclosure agreements executed between Lattice and Firm-1 and later between Lattice and Firm-2. CHOW signed each of these nondisclosure agreements, on behalf on behalf of Firm-1 as Managing Director of Firm-1 and on behalf of Firm-2 as Managing Partner of Firm-2.

     b.    In violation of these nondisclosure agreements, CHOW provided CC-1 with material non-public information regarding the potential merger between Lattice and Firm-1 and later Firm-2. On numerous occasions, CC-1 made profitable trades in Lattice after receiving the information from CHOW, yielding a total of approximately $5 million in profits.

## Chow's Confidentiality Obligations

7.  On or about April 27, 2016, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, signed, as Managing Director of Firm-1, a nondisclosure

agreement between Lattice and Firm-1 relating to a potential merger between the parties (the "Lattice/Firm-1 NDA"). The Lattice/Firm-1 NDA provided, among other things, that "[t]he fact of the exploration and evaluation of a potential strategic relationship between the Parties shall be deemed 'Confidential' and subject to the protections of this Agreement as Proprietary Information." The Lattice/Firm-1 NDA further provided that such Proprietary Information may not be disclosed or used "for any purpose, except to evaluate and/or engage in discussions regarding, and potentially pursue and effect, the potential business transaction involving the Parties."

8.   On or about September 9, 2016, shortly after BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, formed Firm-2, CHOW signed, as Managing Partner of Firm-2, a nondisclosure agreement between Lattice and Firm-2 relating to a potential merger between the parties (the "Lattice/Firm-2 NDA").   The Lattice/Firm-2 NDA imposed the same obligations on CHOW as were imposed on him in the Lattice Firm-1 NDA.

## Chow's Relationship With CC-1

9.   BENJAMIN  CHOW,  a/k/a  "Ben  Chow  Zhou  Bin,"  a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, and CC-1 were former colleagues at a private investment fund, where CHOW

4

was an Investment Manager focusing on technology, media and telecommunications investment in North Asia.

10.  In or about March 2016, CC-1 sent a text message to BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, telling CHOW that CC-1 was then operating his own investment fund focused on long/short equity positions; in essence, that CC-1 was a full-time trader.  Against that backdrop, in the following months CHOW and CC-1 met on multiple occasions for coffee and exchanged text and voice messages.

### Chow Provided CC-1 Material Non-Public Information Relating to the Lattice Merger

11.  Beginning in or about April 2016, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, participated as Managing Director of Firm-1 in discussions with representatives of Lattice relating to a potential offer by Firm-1 to acquire Lattice.  On or about April 27, 2016, CHOW signed the Lattice/Firm-1 NDA on behalf of Firm-1.

12.  On or about July 5, 2016, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, arranged to meet with CC-1 at a coffee shop in the China World Trade Center located in Beijing, China.  Later that night, CC-1 purchased a total of approximately 248,268 shares of Lattice.

13.  On or about July 7, 2016, Firm-1 submitted a confidential non-binding indication of interest to Lattice, proposing to acquire all the outstanding shares of Lattice for $8.00 per share in cash.  Based on the closing trading price of $5.32 for Lattice common shares on the previous trading day, July 6, 2016, the proposal implied a premium of 50%.  Firm-1's July 7, 2016 submission contemplated that Firm-1 and Lattice would approach the Committee on Foreign Investment in the United States ("CFIUS"), which is an inter-agency government committee authorized to review transactions that could result in control of a United States business by a foreign person.

14.  On or about July 12, 2016, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, exchanged text messages with CC-1 relating to Firm-1's confidential indication of interest in acquiring Lattice, FPGA technology, CFIUS, and the identity of the law firm advising Firm-1 on the proposed merger (the "Law Firm").  Later on or about July 12, 2016, CHOW agreed via text message to meet with CC-1 the following day, July 13, 2016 at CHOW's office in Beijing, China. Beginning on or about July 13, 2016 through July 22, 2016, CC-1 purchased a total of approximately 280,283 shares of Lattice.

6

15. On or about July 28, 2016, Firm-1 submitted to Lattice
a revised confidential non-binding indication of interest in
acquiring Lattice in an all-cash transaction for a price between
$8.75 and $9.00 per share. Based on the closing trading price of
$6.14 for Lattice common shares on the previous trading day, this
proposal implied a premium of between 43% and 47%. The following
two business days, Friday, July 29, 2016, and Monday, August 1,
2016, CC-1 purchased a total of approximately 150,000 shares of
Lattice.

16. On or about August 10, 2016, BENJAMIN CHOW, a/k/a "Ben
Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the
defendant, sent a text message to CC-1 stating that he was "in the
middle of a deal," and therefore could not leave the West Coast of
the United States, which is where Lattice is headquartered. The
same day, CC-1 purchased a total of approximately 120,000 shares
of Lattice.

17. On or about August 17, 2016, Lattice notified Firm-1
that it received an expression of interest from another party to
acquire Lattice, but that it had declined to meet with this other
party pursuant to Lattice's obligations under an exclusivity
agreement Lattice had entered into with Firm-1. Via text message,
BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin
Chow," a/k/a "Bin Zhou," the defendant, agreed to meet CC-1 that

7

same day. Later that day, CC-1 purchased a total of approximately 35,800 shares of Lattice.

18. In or about early September 2016, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, formed a new private equity fund, which ultimately became Firm-2.

19. On or about September 9, 2016, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, signed the Lattice/Firm-2 NDA. That same day, CC-1 purchased a total of approximately 44,554 shares of Lattice. The following day, September 10, 2016, Firm-2 submitted to Lattice a confidential non-binding indication of interest to acquire Lattice for $8.30 per share in an all-cash transaction. Based on the closing trading price of $5.98 for Lattice common shares on the previous trading day, the proposal implied a premium of 39%.

20. On or about September 13, 2016, Lattice and Firm-2 entered into an exclusivity agreement, providing that Lattice would not initiate discussions regarding a potential acquisition with any third party through at least October 4, 2016. Also on or about September 13, 2016, the Law Firm, now acting as counsel to Firm-2, provided Lattice's counsel with a draft merger agreement. The same day, on or about September 13, 2016, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou,"

8

the defendant, agreed to meet with CC-1 at the China World Trade Center in Beijing, China. Later on the same day, CC-1 purchased approximately 116,387 shares of Lattice. The following day, September 14, 2016, CC-1 purchased approximately 260,501 shares of Lattice. And on or about September 15, 2016, CC-1 purchased an additional approximately 536,310 shares of Lattice.

21. On or about September 16, 2016, CC-1 sent a text message to another individual stating, in substance and in part, that a "friend" had told CC-1 that the Lattice merger was moving forward. That same day, CC-1 purchased a total of approximately 208,300 shares of Lattice.

22. On or about September 21, 2016, CC-1 sent a voice message to BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, relating to the potential merger between Lattice and Firm-2. In this message, CC-1 related, in substance, that CC-1 had heard from a banker that Lattice was concerned about obtaining CFIUS approval for the merger with Firm-2. CHOW responded by voice message that same day, September 21, 2016, stating that "we should be able to sign the contract soon. Yeah." Beginning the following day, through and including October 12, 2016, CC-1 purchased a total of approximately 2,206,760 shares of Lattice.

9

23. On or about October 17, 2016, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, and CC-1 arranged via text message to meet that day at the China World Trade Center in Beijing, China. Following this meeting, CC-1 sent text messages to two individuals advising them to purchase shares of Lattice. To one of these individuals, CC-1 wrote, in pertinent part, "Is your position loaded? If not, purchase 5-10% [position] of LSCC at around $6. (not urgent, buy in batches over 3-5 days)." To the other, CC-1 wrote, in pertinent part, "Just buy 25,000 shares of LSCC (Either change a position, or use the remaining 1/3.) For the $150,000 position, I will bear the risk for you." Also beginning the day of this meeting, October 17, 2016, through and including October 24, 2016, CC-1 purchased a total of approximately 1,931,102 shares of Lattice.

24. On or about November 1, 2016, Lattice senior management met with representatives of Firm-2 and finalized the merger agreement. That same day, CC-1 purchased a total of approximately 427,949 shares of Lattice.

25. On or about November 2, 2016, Lattice's board of directors formally approved the transaction whereby Firm-2 would purchase all shares of Lattice common stock for $8.30 per share. That same day, CC-1 purchased approximately 476,500 shares of Lattice.

10

26. The following day, November 3, 2016, Firm-2 and Lattice formally executed a merger agreement and issued a joint press release announcing the merger which noted, among other things, that the $8.30 per share price represented a 30% premium to . Lattice's last trade price on November 2, 2016, the last trading day prior to announcement. The agreement was signed by BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, on behalf of Firm-2.

27. On or about November 3, 2016, CC-1 sold a substantial quantity of the Lattice shares he had purchased, resulting in a profit of approximately $5 million.

## Chow's Lies to the Financial Industry Regulatory Authority

28. In or about April 2017, in response to an inquiry by the Financial Industry Regulatory Authority ("FINRA") into possible insider trading in Lattice relating to the November 3, 2016 merger agreement, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, falsely stated through counsel, among other things, that he did not recall discussing Lattice with CC-1 and is not aware of any circumstance by which CC-1 may have gained knowledge of Firm-2's business activities relating to the merger between Lattice and Firm-2.

11

## Statutory Allegations

29.  From at least in or about March 2016 through in or about
November 2016, in the Southern District of New York and elsewhere,
BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin
Chow," a/k/a "Bin Zhou," the defendant, and others known and
unknown, willfully and knowingly did combine, conspire,
confederate and agree together and with each other to commit
offenses against the United States, to wit, securities fraud, in
violation of Title 15, United States Code, Sections 78j(b) & 78ff,
and Title 17, Code of Federal Regulations, Section 240.10b-5.

30.  It was a part and object of the conspiracy that BENJAMIN
CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a
"Bin Zhou," the defendant, and others known and unknown, willfully
and knowingly, directly and indirectly, by the use of means and
instrumentalities of interstate commerce, and of the mails, and of
facilities of national securities exchanges, would and did use and
employ, in connection with the purchase and sale of securities,
manipulative and deceptive devices and contrivances in violation
of Title 17, Code of Federal Regulations, Section 240.10b-5 by:
(a) employing devices, schemes and artifices to defraud; (b) making
untrue statements of material fact and omitting to state material
facts necessary in order to make the statements made, in the light
of the circumstances under which they were made, not misleading;

12

33.  From at least in or about July 2016 through in or about November 2016, in the Southern District of New York and elsewhere, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, in violation of duties CHOW owed to Lattice, Firm-1 and Firm-2, CHOW provided CC-1 with material, non-public information regarding a potential merger between Lattice and Firm-1 and Firm-2 in anticipation that CC-1 would use the information to trade, and CC-1 did trade using the information in connection with the securities transactions described below:

14

| Count | Date(s) | Transaction |
|-------|---------|-------------|
| 2 | July 5, 2016 | Purchase of approximately 248,268 shares of Lattice |
| 3 | July 13, 2016 through July 22, 2016 | Purchase of approximately 280,283 shares of Lattice |
| 4 | July 29, 2016 and August 1, 2016 | Purchase of approximately 150,000 shares of Lattice . |
| 5 | August 10, 2016 | Purchase of approximately 120,000 shares of Lattice |
| 6 | August 17, 2016 | Purchase of approximately 35,800 shares of Lattice |
| 7 | September 9, 2016 | Purchase of approximately 44,554 shares of Lattice |
| 8 | September 13, 2016 through September 15, 2016 | Purchase of approximately 913,198 shares of Lattice |
| 9 | September 16, 2016 | Purchase of approximately 208,300 shares of Lattice |
| 10 | September 22, 2016 through October 12, 2016 | Purchase of approximately 2,206,760 shares of Lattice |
| 11 | October 17, 2016 through October 24, 2016 | Purchase of approximately 1,931,102 shares of Lattice |
| 12 | November 1, 2016 | Purchase of approximately 427,949 shares of Lattice |
| 13 | November 2, 2016 | Purchase of approximately 476,500 shares of Lattice |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5 and
240.10b5-2; and Title 18, United States Code, Section 2.)

15

## COUNT FOURTEEN

### (Securities Fraud)

The Grand Jury further charges:

34. The allegations set forth in paragraphs 1 through 28 and paragraph 31 are realleged and incorporated by reference as if fully set forth herein.

35. From at least in or about July 2016 through in or about November 2016, in the Southern District of New York and elsewhere, BENJAMIN CHOW, a/k/a "Ben Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the defendant, knowingly and intentionally executed a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit, CHOW provided CC-1 with material non-public information regarding a potential merger

16

between Lattice and Firm-1 and Firm-2 in anticipation that CC-1
would trade on it, and CC-1 did trade using the information.

(Title 18, United States Code, Sections 1348 & 2.)

### FORFEITURE ALLEGATION

36.  As a result of committing the offenses alleged in Counts
One through Fourteen of this Indictment, BENJAMIN CHOW, a/k/a "Ben
Chow Zhou Bin," a/k/a "Benjamin Bin Chow," a/k/a "Bin Zhou," the
defendant, shall forfeit to the United States, pursuant to Title
18, United States Code, Section 981(a)(1)(C) and Title 28, United
States Code, Section 2461(c), any and all property, real and
personal, that constitutes or is derived from proceeds traceable
to the commission of said offenses, including but not limited to
a sum of money in United States currency representing the amount
of proceeds traceable to the commission of said offenses.

### Substitute Asset Provision

37.  If any of the above described forfeitable property, as
a result of any act or omission of the defendants:

> a.  cannot be located upon the exercise of due
> diligence;
>
> b.  has been transferred or sold to, or deposited with,
> a third person;
>
> c.  has been placed beyond the jurisdiction of the
> Court;

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

BENJAMIN CHOW,
a/k/a "Ben Chow Zhou Bin,"
a/k/a "Benjamin Bin Chow,"
a/k/a "Bin Zhou,"

Defendant.

### INDICTMENT

17 Cr. ___ (___)

(Title 18, United States Code, Sections
371, 1348 & 2; Title 15, United States
Code, Sections 78j(b) & 78ff; and Title
17, Code of Federal Regulations,
Section 240.10b-5;)

JOON H. KIM
Acting United States Attorney.

A TRUE BILL

Foreperson.

19